IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| HENRY THOMAS CLARK, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | 1:11CV948 |
| v. | ) | 1:08CR297-1 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Petitioner Henry Thomas Clark, a federal prisoner, has brought a Motion [Doc. #43][1] to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Petitioner also filed two Motions [Doc. #64, 65] seeking to amend his § 2255 Motion. The Motions to Amend will be granted to the extent that the Court will consider all of the claims raised by Petitioner, as set out below.

Petitioner pled guilty in this Court to possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), with enhanced penalties in light of an Amended Information of Prior Conviction [Doc. #10] filed pursuant to 21 U.S.C. § 851. Petitioner qualified as a career offender under the United States Sentencing Guidelines ("USSG") and was sentenced to 252 months imprisonment. Following an unsuccessful direct

---

[1] This and all further cites to the record are to the criminal case.

appeal, he filed the current § 2255 Motion, which Respondent opposes in a Response [Doc. #50] and Supplemental Response[2] [Doc. #62].

Discussion

Petitioner's first claim in his original § 2255 Motion is that he received ineffective assistance of counsel because his attorneys did not challenge his current federal charges on the grounds that he had already been prosecuted for the same conduct in state court. In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. See Strickland v. Washington, 466 U.S. 668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. See Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992). A petitioner bears the burden of affirmatively showing deficient performance. See Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). To show prejudice following a guilty plea, a petitioner must establish that there is a reasonable probability that but for counsel's allegedly deficient conduct, he would not have pled guilty but would have gone to trial. Hill v. Lockhart, 474 U.S. 52 (1985). The Court must determine whether "a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 130 S. Ct. 1473, 1485 (2010). This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007).

---

[2] In the Supplemental Response, the Government raises a statute of limitations defense. However, given that Petitioner's original § 2255 Motion was filed within a year of the denial of his direct appeal, any claims contained in that Motion are timely under § 2255(f)(1). The Court will address Petitioner's claims on their merits.

2

Here, the Government acknowledges that it did prosecute Petitioner in this Court for conduct that also formed the basis for an earlier prosecution in the courts of North Carolina. Generally, this is prohibited, not by the United States Constitution, but by an internal government policy known as the "Petite policy." United States v. Jackson, 327 F.3d 273, 294-295 (4th Cir. 2003). However, if certain conditions exists, local United States Attorneys may seek a waiver of that policy from the United States Attorney General. Respondent did so in this case, and Petitioner's prosecution proceeded under that waiver. Petitioner suggests first that his attorneys should have challenged his prosecution in this Court based on a violation of his right to be free from double jeopardy under the Fifth Amendment of the United States Constitution. However, the law has long been clear that the federal government and state governments are separate sovereigns, so that prosecution by both governments for the same conduct does not violate the Double Jeopardy Clause. Abbate v. United States, 359 U.S. 187, 194 (1959). Nor does the Petite policy provide defendants with an individually enforceable rights. Jackson, 327 F.3d at 295. Petitioner's attorneys did not render deficient performance or prejudice him by failing to raise such a clearly frivolous argument.

Petitioner also asserts that his attorneys should have challenged his prosecution based on prosecutorial vindictiveness in seeking the waiver of the Petite Policy. In order to establish prosecutorial vindictiveness, Petitioner must show that the prosecutor acted with genuine animus toward him and that he would not have been prosecuted but for that animus. United States v. Wilson, 262 F.3d 305, 314-15 (4th Cir. 2001). Petitioner fails to make either of these showings. Petitioner makes nothing more than conclusory allegations that vindictiveness or

3

animus led to his prosecution in this Court. He therefore provides no basis upon which his attorneys could have challenged the prosecution. His conclusory allegations cannot establish either prong of the Stickland test and this claim should be denied.

Petitioner next contends that his attorneys should have challenged the use of the § 851 enhancement because the predicate conviction listed in the Amended Information of Prior Conviction was not yet final. He basis his finality argument on the fact that he was still on post-release supervision for the predicate offense at the time he committed the instant offense. In his view, the predicate offense was not final because he was still serving his sentence for the offense. Petitioner's argument fails because he misdefines finality. A predicate offense is final not when a defendant finishes serving the sentence for the offense, but when the time for filing a direct appeal expires. United States v. Howard, 115 F.3d 1151, 1158 (4th Cir.1997). Here, the offense listed in the Amended Information was Petitioner's prior federal conviction for conspiracy to distribute cocaine base in United States v. Clark, 1:97CR263-1 (M.D.N.C.). A review of the docket in that case reveals that judgment was entered on June 30, 1998, and that Petitioner filed no direct appeal. Therefore, the predicate conviction became final in July of 1998. Petitioner committed the instant crime on October 20, 2007, or more than nine years later. Petitioner's attorneys had absolutely no basis for challenging the finality of the predicate conviction. Petitioner additionally argues that his attorney should have used this finality argument to challenge the use of his prior federal conviction as a predicate offense for the career offender enhancement. However, had his attorney attempted to do so, the argument would have failed for the same reasons. Counsel did not engage in deficient performance in failing to

4

raise this argument and could not have prejudiced Petitioner in any event. This claim should also be denied.

Petitioner also challenges the predicate offense supporting the § 851 enhancement on the grounds that, under Carachuri-Rosendo v. Holder, 130 S. Ct. 2577 (2010), and United States v. Simmons, 649 F.3d 237 (4th Cir. 2011), he did not face more than a year of imprisonment for the prior conviction. However, this claim is based on confusion by Petitioner, who points to a state court conviction in 07 CRS 53750 as the predicate offense. Although the original Information of Prior Conviction [Doc. #7] listed that offense, Petitioner's sentence was enhanced based on an Amended Information [Doc. #10] listing his prior federal conviction, a conviction for which he received an initial sentence of 262 months of imprisonment. He not only faced more than a year of imprisonment for that predicate offense, but also received a sentence of far more than a year. It is less clear in his original Motion, but he may also be challenging his career offender enhancement on this basis. If so, it fails for essentially the same reason. Petitioner's was determined to be a career offender based on the prior federal drug conviction and on a second-degree murder conviction from North Carolina. (Presentence Report, ¶¶ 17, 24, 30.) He received the 262-month sentence just discussed for the federal conviction and a 10-year sentence for the second-degree murder conviction. Therefore, to the extent Petitioner raises a challenge to the career offender enhancement, this also fails.

Turning now to the claims contained in Petitioner's first Motion to Amend, he first argues that Respondent unduly delayed charging him in the instant case. Unnecessary delay in indicting a defendant can violate his due process rights under the Fifth Amendment of the

5

United States Constitution. United States v. Marion, 404 U.S. 307, 325-26. However, "the Fifth Amendment would [only] require dismissal of the indictment if it were shown . . . that the pre-indictment delay . . . caused substantial prejudice to [Petitioner's] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." Id. This requires a showing of actual prejudice, and also requires that any prejudice be "substantial." United States v. Shealey, 641 F.3d 627, 634 (4th Cir. 2011).

Petitioner alleges that the delay in indicting him in this case allowed the Government to benefit from the fact that he already pled guilty in the State courts to the same conduct and had acknowledged in this Court that he violated his conditions of supervised release in his prior federal case. He maintains that this resulted in an unfair tactical advantage which prejudiced his defense. However, even if his guilty pleas or statements in the other cases are the type of tactical advantage that could be improper in some circumstances, Petitioner cannot show a violation of his rights in the present case. First, any claim of a delay by the Government with deliberate intent to prejudice Petitioner's defense is conclusory. Further, Petitioner's arrest on state charges occurred on October 20, 2007, and he pled guilty in state court less than twenty days later on November 8, 2007. (PSR, ¶ 7.) Thus, in order to have indicted Petitioner prior to his guilty plea, federal authorities would have had to act almost immediately. It is not even clear that the matter could have been brought before a federal grand jury during that time and, in any event, a time period of less than twenty days cannot be described as any sort of undue or improper delay. It is true that the Government did not actually indict Petitioner in the instant case until August 25, 2008. However, Plaintiff has not alleged any prejudice with respect to any

6

delay after the state court guilty plea occurred in November of 2007. As to the supervised release proceeding, admissions made as part of his supervised release revocation in this Court "at best strengthened the Government's case on the margins," but did not substantially prejudice Petitioner's case. Sheeley, 641 F.3d at 634. In the end, there was no undue delay by the Government with respect to the state court guilty plea, and the supervised release proceedings did not result in substantial prejudice to Petitioner. This claim fails for those reasons.

Petitioner's next supplemental claim is that he received ineffective assistance when his trial counsel misadvised him concerning his decision to plead guilty versus pursuing a suppression motion and going to trial. Petitioner claims first that his attorney told him that the Government only needed to show that he possessed controlled substances and nothing more in order to convict him at trial. Petitioner states that he did not know that the Government actually had to show that he intended to distribute the substances and adds that he was "entitled to know of this element before pleading guilty." (Motion for Leave to Amend [Doc. #64] at 7.) The problem for Petitioner is that he did know this element when pleading guilty. After placing Petitioner under oath, the Judge conducting Petitioner's plea hearing asked him a series of questions, including some concerning the elements of his crime that the Government had to prove beyond a reasonable doubt. Specifically, he asked Petitioner whether or not he understood that the Government had to prove that he "knowingly or intentionally . . . possessed with intent to distribute a controlled substance" and that "at the time of [his] possession with intent to distribute a controlled substance, [he] knew that the substance was, in fact, a controlled substance." (Plea Transcript [Doc. #35] at 24-25.) Petitioner acknowledged that he understood

7

this and confirmed that he had no questions. (Id. at 25.) Therefore, Petitioner was advised of the intent to distribute element of his crime and stated under oath that he understood it. "[S]tatements of fact by a defendant in Rule 11 proceedings may not ordinarily be repudiated, and, similarly, findings by a sentencing court in accepting a plea constitute a formidable barrier to attacking the plea." United States v. Wilson, 81 F.3d 1300, 1308 (4th Cir. 1996) (citations and internal quotation marks omitted). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005). Petitioner's claims present no such "extraordinary circumstances" and his claim should be denied accordingly.

Petitioner also alleges that counsel incorrectly told him that he faced a life sentence if he proceeded to trial. However, Petitioner did face up to a life sentence if he proceeded to trial. Not only did his statute of conviction, § 841(b)(1)(B), allow for a sentence of up to life imprisonment based on the § 851 enhancement, but the United States Sentencing Guidelines would also have called for a sentence up to life if Petitioner proceeded to trial. Based on his guilty plea, which produced a three-level reduction for acceptance of responsibility, Petitioner's total offense level under the Guidelines was 34 with a criminal history category of VI, with an advisory sentencing range of 262 to 327 months of imprisonment. Had he proceeded to trial, this would have almost certainly cost him the three-level reduction, thereby increasing his total offense level to 37 with a criminal history category of VI, which correlates to an advisory

8

sentencing range of 360 months to life imprisonment. At best, proceeding to trial and losing would have very likely cost Petitioner an additional 108 months of imprisonment, and it could well have produced an even higher sentence, including the possibility of life imprisonment. Therefore, Petitioner's attorney was not incorrect to warn him of the danger of a life sentence if he proceeded to trial. Further, Petitioner points to no reason why a decision to reject the plea bargain and proceed to trial would have been rational under the circumstances. As Petitioner himself points out in conjunction with his motion, he had already admitted guilt in state court and this Court. He cites to no witness or evidence that would have provided him with any defense even in the absence of these admissions. The Factual Basis [Doc. #17] in his case indicates that two police officers saw him attempting to conceal a brown paper bag at a traffic checkpoint just before he exited the vehicle and ran with the bag. Petitioner tossed the bag away during a subsequent struggle with officers, but they recovered the bag, which contained approximately 80 grams of marijuana, 12 grams of cocaine base, and 8 ecstasy pills. Assuming that the officers would have testified to these facts at trial, Petitioner puts forth nothing to contradict their story or the inference that he intended to deal the drugs based on the amount of drugs and the fact that the bag contained three very different types of drugs. Taking the stand in his own defense would have led to cross-examination regarding his prior admissions and his earlier federal drug dealing conviction. The almost certain result, a conviction, would probably have added more than 100 months to Petitioner's prison sentence. No rational defendant would have proceeded to trial in these circumstances. Therefore, Petitioner's claim that counsel

9

misadvised him concerning the penalties or consequences of proceeding to trial should be denied.

Finally, in Petitioner's second Motion to Amend, he reports that the two arresting officers in his case were later alleged to have engaged in misconduct. According to newspaper articles attached to that Motion, one of those officers reported to authorities that the other officer possibly took money or other valuable items from suspects. The reporting officer was then disciplined and possibly terminated for reporting his allegations in an improper fashion, while the accused officer resigned. It is not clear how these facts, even if true, affect Petitioner's case. The incidents described in the articles apparently took place, or at least came to light, in the spring of 2012, which is several years after Petitioner's plea and sentencing in this Court in late 2008 and 2009. Nor were any of the events related to Petitioner's arrest. Petitioner points to nothing which could have affected his case then or now. Therefore, any claim that Petitioner is attempting to raise in his second Motion to Amend should be denied.[3]

IT IS THEREFORE ORDERED that Petitioner's Motions to Amend [Doc. #64, 65] are granted to the extent that the Court has considered the substance of the claims as set out herein.

---

[3] At one point, Petitioner mentions simply raising the matter to preserve it pending the conclusion of an investigation of the officers' conduct. However, there is nothing to preserve. Petitioner points to no link between the alleged later misconduct and his drug arrest at a traffic checkpoint.

IT IS RECOMMENDED that Petitioner's Motion to vacate, set aside or correct sentence [Doc. #43], as amended, be denied and that this action be dismissed.

This, the 11th day of February, 2015.

                                                /s/ Joi Elizabeth Peake
                                                United States Magistrate Judge